# 24-10612

# United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; STATE OF LOUISIANA; STATE OF MISSISSIPPI;
STATE OF UTAH; JEFFREY W. TORMEY; GUN OWNERS OF AMERICA,
INCORPORATED; GUN OWNERS FOUNDATION; TENNESSEE FIREARMS ASSOCIATION;
VIRGINIA CITIZENS DEFENSE LEAGUE,

*Plaintiffs-Appellees,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; UNITED STATES
DEPARTMENT OF JUSTICE; MERRICK GARLAND, in his official capacity as Attorney
General of the United States; STEVEN DETTELBACH, in his official capacity as
Director of Bureau of Alcohol, Tobacco, Firearms and Explosives,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas

**BRIEF FOR STATES OF NEW YORK, MASSACHUSETTS, CALIFORNIA,
COLORADO, CONNECTICUT, DELAWARE, HAWAIʻI, ILLINOIS, MAINE,
MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NORTH
CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT,
WASHINGTON, AND WISCONSIN, AND THE DISTRICT OF COLUMBIA
IN SUPPORT OF APPELLANTS AND REVERSAL**

ANDREA JOY CAMPBELL
  *Attorney General of Massachusetts*
DAVID C. KRAVITZ
  *State Solicitor*
ANNA LUMELSKY
  *Deputy State Solicitor*
CHRISTINE DOKTOR
  *Director*
RYAN T. MINGO
  *Deputy Director*
  *Gun Violence Prevention Unit*
One Ashburton Place
Boston, Massachusetts 02108

LETITIA JAMES
  *Attorney General of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
MOLLY THOMAS-JENSEN
  *Special Counsel*
28 Liberty Street
New York, New York 10005
(212) 416-6279

Dated: September 24, 2024

*(Additional counsel listed on signature pages.)*

# CERTIFICATE OF INTERESTED PERSONS
## Supplemental Statement Pursuant to Local Rule 29.2

*State of Texas v. Bureau of Alcohol,*
*Tobacco, Firearms and Explosives,*
No. 24-40160

Under the fourth sentence of Fifth Circuit Rule 28.2.1, all the signatories listed below are governmental entities and need not furnish a certificate of interested persons.

 */s/ Ester Murdukhayeva*
Ester Murdukhayeva
*Counsel of Record for Amici States of New York, Massachusetts, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin, and the District f Columbia*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................ii

INTRODUCTION AND INTERESTS OF AMICI ..................................... 1

ARGUMENT ........................................................................................ 4

THE FINAL RULE LAWFULLY ADDRESSES THE SIGNIFICANT
PROBLEM OF ILLEGAL GUN TRAFFICKING ................................................ 4

    A.    State and Local Governments Suffer from Catastrophic
           Harms Caused by Illegal Gun Trafficking. ............................ 6

    B.    The Final Rule Properly Implements Congress's
           Amended Definition of "Engaged in the Business." ............... 12

    C.    The Final Rule Promotes Public Safety by Requiring
           More Sellers to Obtain Licenses, Conduct Background
           Checks, and Keep Transaction Records. ............................... 15

CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abramski v. United States,*
573 U.S. 169 (2014) ................................................................. 5, 16-17

*Huddleston v. United States,*
415 U.S. 814 (1974) ........................................................................... 4

*Mance v. Sessions,*
896 F.3d 699 (5th Cir. 2018) ............................................................. 5

*United States v. Rahimi,*
144 S. Ct. 1889 (2024) ....................................................................... 4

**Statutes**

*Federal*

Bipartisan Safer Communities Act, Pub. L. No. 117-159,
136 Stat. 1313 (2022) ................................................................. 1-2, 12

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968) ......... 5

18 U.S.C.
§ 921 ....................................................................... 12-13, 15
§ 921 et seq. .......................................................................... 4
§ 922 ..................................................................................... 4-5
§ 923 ....................................................................................... 5
§ 926 ..................................................................................... 12

*New York*

General Business Law
§§ 875-a to -i ........................................................................ 9
§ 875-g ................................................................................... 9
§ 898 ...................................................................................... 9

**Regulation**                                                                    **Page(s)**

Definition of "Engaged in the Business" as a Dealer in
Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ........................ 1, 12-15

**Miscellaneous Authorities**

Annie Sweeney & Jason Meisner, *Tracking the Baby Glock
That Killed Cmdr. Bauer*, Chi. Trib. (Mar. 1, 2018),
https://www.chicagotribune.com/2018/03/01/tracking-the-
baby-glock-that-killed-cmdr-bauer-a-wisconsin-shop-a-gun-
club-and-a-shadowy-sale-on-the-internet/ .......................................... 7

Bureau of Alcohol, Tobacco, Firearms & Explosives, ATF Form
4473, Firearms Transaction Record (last revised Aug. 2023),
https://www.atf.gov/firearms/docs/4473-part-1-firearms-
transaction-record-over-counter-atf-form-53009/download .............. 16

Bureau of Alcohol, Tobacco, Firearms & Explosives,
*Firearms Trace Data: California – 2022* (last reviewed Sept.
27, 2023), https://www.atf.gov/resource-center/firearms-
trace-data-california-2022 .................................................................. 11

Bureau of Alcohol, Tobacco, Firearms & Explosives,
*Firearms Trace Data: Massachusetts – 2022* (last reviewed
Sept. 27, 2023), https://www.atf.gov/resource-
center/firearms-trace-data-massachusetts-2022 .............................. 11

Bureau of Alcohol, Tobacco, Firearms & Explosives,
*Firearms Trace Data: New Jersey – 2022* (last reviewed Sept.
27, 2023), https://www.atf.gov/resource-center/firearms-
trace-data-new-jersey-2022 ............................................................. 10

Bureau of Alcohol, Tobacco, Firearms & Explosives, *How ATF
Traces Firearms* (Aug. 2018), https://www.atf.gov/resource-
center/infographics/how-atf-traces-firearms ..................................... 17

**Miscellaneous Authorities**                                        **Page(s)**

Bureau of Alcohol, Tobacco, Firearms & Explosives, *Number of Firearms Sourced and Recovered in the United States and Territories* (Excel spreadsheet), *in Firearms Trace Data – 2022* (last reviewed Oct. 11, 2023), https://www.atf.gov/resource-center/docs/report/number-firearms-sourced-and-recovered-united-states-and-territories-cy/download ........................................ 11

Bureau of Alcohol, Tobacco, Firearms & Explosives, *Part I: Introduction and Methodology, in* 3 *National Firearms Commerce and Trafficking Assessment (NFCTA): Firearms Trafficking Investigations* (last reviewed Apr. 4, 2024), https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-i/download ................................................................. 7

Bureau of Alcohol, Tobacco, Firearms & Explosives, *Part III: Firearm Trafficking Channels and Methods Used, in* 3 *National Firearms Commerce and Trafficking Assessment (NFCTA): Firearms Trafficking Investigations* (last reviewed Apr. 4, 2024), https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-iii/download ............................................................... 8

Bureau of Alcohol, Tobacco, Firearms & Explosives, *Report: New York* (2023), https://www.atf.gov/firearms/docs/report/new-york-state-report/download ................................................................ 10

Denise Mann, *With Cases Soaring, Guns Are Now Leading Cause of Death for U.S. Kids*, U.S. News & World Rep. (Aug. 21, 2023), https://www.usnews.com/news/health-news/articles/2023-08-21/with-cases-soaring-guns-are-now-leading-cause-of-death-for-u-s-kids ...................................................... 6

Everytown Rsch. & Pol'y, *Gun Laws in Massachusetts* (last updated Jan. 4, 2024), https://everytownresearch.org/rankings/state/massachusetts/ ......... 11

**Miscellaneous Authorities**                                             **Page(s)**

Everytown Rsch. & Pol'y, *Five Things to Know About Crime Guns, Gun Trafficking, and Background Checks* (May 24, 2021), https://everytownresearch.org/report/five-things-to-know-about-crime-guns/ ........................................................ 9

Giffords Law Center to Prevent Gun Violence, *Massachusetts Gun Laws* (n.d.), https://giffords.org/lawcenter/gun-laws/states/massachusetts/ .................................................. 11

Gregor Aisch & Josh Keller, *How Gun Traffickers Get Around State Gun Laws*, N.Y. Times (Nov. 13, 2015), https://www.nytimes.com/interactive/2015/11/12/us/gun-traffickers-smuggling-state-gun-laws.html ...................................... 10

John Gramlich, *What the Data Says About Gun Deaths in the U.S.*, Pew Research Center (Apr. 26, 2023), https://www.pewresearch.org/short-reads/2023/04/26/what-the-data-says-about-gun-deaths-in-the-u-s/ ......................................... 6

KFF, *Firearms Are the Leading Cause of Death for Children in the United States But Rank No Higher Than Fifth in Other Industrialized Nations* (July 8, 2022), https://www.kff.org/health-reform/press-release/firearms-are-the-leading-cause-of-death-for-children-in-the-united-states-but-rank-no-higher-than-fifth-in-other-industrialized-nations/ ................................................................ 6

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ...................... 15

Nick Penzenstadler, *Gun Shops That Sell the Most Guns Used in Crime Revealed in New List*, USA Today (Feb. 15, 2024), https://www.usatoday.com/story/news/investigations/2024/02/15/shops-selling-most-crime-guns-revealed-atf/72581120007/ ......... 10

**Miscellaneous Authorities**                                                 **Page(s)**

Press Release, U.S. Att'y's Off. – E. Dist. of N.Y., *Four Gun Traffickers Charged with Selling Over 50 Firearms in Brooklyn* (Jan. 11, 2023), https://www.justice.gov/usao-edny/pr/four-gun-traffickers-charged-selling-over-50-firearms-brooklyn ................................................................. 7

Press Release, U.S. Dep't of Justice, *Justice Department Announces Publication of Third Volume of National Firearms Commerce and Trafficking Assessment* (Apr. 4, 2024), https://www.justice.gov/opa/pr/justice-department-announces-publication-third-volume-national-firearms-commerce-and ................................................................. 8

Stephen Montemayor, *The Life of a Gun*, Star Trib. (July 14, 2023), https://www.startribune.com/st-paul-truck-park-bar-mass-shooting-tracing-gun-texas-twin-cities/600289509/ ................. 7

## INTRODUCTION AND INTERESTS OF AMICI

Amici are the States of New York, Massachusetts, California, Colorado, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin, and the District of Columbia. Amici submit this brief in support of defendant-appellant U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the challenged regulation, which implements recent amendments to the federal statute governing sales of firearms. *See* Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024) (to be codified at 27 C.F.R. pt. 478) ("Final Rule"). For the reasons explained below, the Final Rule is consistent with Congress's statutory directives and reasonably addresses the important problems caused by illegal interstate commerce in firearms, often referred to as "trafficking."

In the summer of 2022, following the mass shootings at Robb Elementary School in Uvalde, Texas, and at Tops Supermarket in Buffalo, New York, Congress enacted the first significant piece of federal gun

legislation in over thirty years.[1] Among other things, the Bipartisan Safer Communities Act (BSCA) closed certain sales loopholes, provided for enhanced background checks, funded gun violence prevention measures, and sought to curb gun trafficking. As relevant here, the BSCA expanded the category of firearm dealers subject to federal regulation by amending the definition of a person who is "engaged in the business" of dealing firearms from someone who has the "principal objective of livelihood and profit" from the sale of firearms to someone who sells firearms "to predominantly earn a profit." *See* 136 Stat. at 1324-25 (amending 18 U.S.C. § 921(a)(1)). The Final Rule implements the statutory changes to the definition of "engaged in the business" and provides clarifying instruction about what conduct falls within the expanded statutory definition.

Amici have compelling government interests in public safety, specifically in the reduction and prevention of violent crime. Amici are committed to preventing gun violence in their states, and they take a variety of approaches towards that goal. Some Amici require background checks on virtually all sales of firearms (including private transfers), while

---

[1] Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313 (2022).

others rely upon the federal statute to govern background checks on sales and transfers of firearms. However, gun violence is a problem that crosses state lines and affects people and communities in all fifty states. Many crime guns (that is, guns recovered in connection with criminal investigations that are traced using the ATF's crime gun tracing systems) recovered in Amici States originate from jurisdictions with laxer regulations on gun sales.

While many solutions to gun violence may be effectuated at the local and state level, the federal government plays a crucial role in addressing the interstate trafficking of firearms. Amici strongly support the BSCA and the Final Rule's efforts to implement its key terms because this additional federal regulation of gun sellers will assist state and local law enforcement in their efforts to eradicate gun trafficking. Amici recognize that many gun owners are law-abiding and committed to the same shared goal of a safer society. The Final Rule will make no discernible difference in how these gun owners buy and sell their guns, but it will make it much more difficult for gun traffickers to source guns that they go on to sell illegally. The preliminary injunction against enforcement of the rule against plaintiffs should therefore be reversed.

# ARGUMENT

## THE FINAL RULE LAWFULLY ADDRESSES THE SIGNIFICANT PROBLEM OF ILLEGAL GUN TRAFFICKING

In 1968, Congress enacted the federal Gun Control Act (GCA), codified at 18 U.S.C. § 921 et seq., to address the ways in which the wide-spread trafficking of firearms "contributed significantly to the prevalence of lawlessness and violent crime in the United States," *Huddleston v. United States*, 415 U.S. 814, 824 (1974). Under the GCA, "[t]he principal agent of federal enforcement is the dealer. He is licensed; he is required to keep records of 'sale . . . or other disposition'; and he is subject to a criminal penalty for disposing of a weapon contrary to the provisions of the Act." *Id.* (citations omitted).

First, the GCA prohibits dealers with federal firearms licenses (FFLs) from transferring firearms to people with felony convictions, active domestic violence restraining orders, outstanding arrest warrants, and other enumerated indicia of dangerousness. *See* 18 U.S.C. § 922(d); *United States v. Rahimi*, 144 S. Ct. 1889, 1901 (2024). Second, to ensure that FFLs do not sell to prohibited persons, federal law requires that they perform a background check on all purchasers of firearms and keep records of firearm transfers, so that if a gun is later used in a crime, law

enforcement agencies can trace the gun to its last known purchaser. 18 U.S.C. §§ 922(t), 923(g); *see also Abramski v. United States*, 573 U.S. 169, 172-73 (2014) (describing FFL obligations and background check process). Third, FFLs are required to report the loss or theft of any firearm within forty-eight hours. 18 U.S.C. § 923(g)(6). They must also comply with commonsense safety standards, such as age restrictions on purchasers, 18 U.S.C. § 922(b)(1), and mandatory distribution secure gun storage or safety devices with handguns, 18 U.S.C. § 922(z).

The GCA's regulations on firearms dealers are "designed to accomplish . . . Congress's principal purpose in enacting the statute—to curb crime by keeping firearms out of the hands of those not legally entitled to possess them." *Abramski*, 573 U.S. at 181 (citations and quotation marks omitted). The regulations on dealers also support state and local law enforcement in "their fight against crime and violence." *See* Gun Control Act of 1968, Pub. L. No. 90-618, § 101, 82 Stat. 1213, 1213 (1968); *Mance v. Sessions*, 896 F.3d 699, 705-06 (5th Cir. 2018).

Notwithstanding the GCA's important measures, communities throughout the country continue to suffer devastating harms from gun violence caused by illegal gun trafficking. As explained in more detail

below, the principal purpose of the Final Rule is to incorporate the amendments to the GCA made by the BSCA, including amendments expanding the situations in which individuals selling guns become subject to federal licensing and background check requirements. The Final Rule's regulatory clarifications are consistent with the statutory text and will assist local, state, tribal, and federal law enforcement in more effectively inspecting gun dealers, tracing crime guns, prosecuting gun charges, and keeping communities safe.

## A.     State and Local Governments Suffer from Catastrophic Harms Caused by Illegal Gun Trafficking.

Gun violence has an increasing and enormously damaging impact on communities across the United States every year, with data showing that more people died from gun-related injuries in 2021 than in any prior year, and that guns are now the leading cause of death among children.[2]

---

[2] John Gramlich, *What the Data Says About Gun Deaths in the U.S.*, Pew Research Center (Apr. 26, 2023); KFF, *Firearms Are the Leading Cause of Death for Children in the United States But Rank No Higher Than Fifth in Other Industrialized Nations* (July 8, 2022); Denise Mann, *With Cases Soaring, Guns Are Now Leading Cause of Death for U.S. Kids*, U.S. News & World Rep. (Aug. 21, 2023). (For authorities available on the internet, full URLs appear in the Table of Authorities. All websites were last visited September 24, 2024.)

Gun trafficking is a key mechanism by which persons who are likely to misuse firearms gain access to weapons. Because they cannot legally purchase a gun from an FFL, many people who are prohibited from possessing a firearm turn to the black market, which is supplied and fueled by gun traffickers. The result is an extraordinary level of harm that is felt in communities across the country. From a mass shooting at a bar in St. Paul, Minnesota, that left one person dead and fourteen people injured,[3] to the murder of a Chicago police officer,[4] to a mass shooting at a block party in Brooklyn that left eight people injured,[5] trafficked guns have been used to carry out catastrophic violence across the United States.

Gun traffickers acquire their guns from a variety of sources, including straw purchasers, gun shows, and unlicensed sellers who advertise on the internet or in newspapers.[6] A recent report issued by ATF

---

[3] Stephen Montemayor, *The Life of a Gun*, Star Trib. (July 14, 2023).

[4] Annie Sweeney & Jason Meisner, *Tracking the Baby Glock That Killed Cmdr. Bauer*, Chi. Trib. (Mar. 1, 2018).

[5] Press Release, U.S. Att'y's Off. – E. Dist. of N.Y., *Four Gun Traffickers Charged with Selling Over 50 Firearms in Brooklyn* (Jan. 11, 2023).

[6] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Part I: Introduction and Methodology, in 3 National Firearms Commerce and Trafficking Assessment (NFCTA): Firearms Trafficking Investigations* 2 (last reviewed Apr. 4, 2024).

indicates that, in the most recent five-year period for which data is available, unlicensed dealers trafficked 40.7% of guns recovered in gun trafficking investigations, 3.6% of guns were trafficked through online marketplaces, 3% were trafficked at gun shows, flea markets, or auctions, 2.7% were trafficked through social media platforms, and 1% were trafficked through peer-to-peer applications.[7] ATF has traced guns trafficked through unlicensed dealers to 368 shootings.[8]

While states can and do take action to shut down sources of illegal guns, gun trafficking is an interstate problem, which limits how much one state (or even a group of states working together) can accomplish. ATF estimates that 32% of the guns it recovers nationally in its trafficking investigations were trafficked across state lines.[9] One advocacy organization found that, between 2016 and 2020, 27% of traced guns, or 390,154

---

[7] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Part III: Firearm Trafficking Channels and Methods Used, in 3 National Firearms Commerce and Trafficking Assessment (NFCTA): Firearms Trafficking Investigations* 2 (last reviewed Apr. 4, 2024).

[8] Press Release, U.S. Dep't of Justice, *Justice Department Announces Publication of Third Volume of National Firearms Commerce and Trafficking Assessment* (Apr. 4, 2024).

[9] Press Release, U.S. Dep't of Justice, *supra*.

guns, were recovered in a state other than the one where they were originally sold, and 74% of those guns were originally purchased in states that did not require background checks on transactions not involving an FFL.[10] Divergent state regulations often exacerbate the problem: although some states apply stringent requirements to all sellers of guns whether or not they are required to separately obtain a federal license, in other states there is no requirement that unlicensed lawful sellers of guns refrain from selling to people who are prohibited from purchasing guns under federal law.

New York's experience is instructive. New York requires licensed gun dealers to maintain security measures and train employees on certain best practices; the state also requires background checks on the purchasers for most private transfers. N.Y. Gen. Bus. Law §§ 875-a to -i, 898. New York inspects gun dealers for compliance with these laws. N.Y. Gen. Bus. Law § 875-g. When *USA Today* released ATF's "Demand 2" list—a list of FFLs that sell the most guns used in crimes—no New York

_____

[10] Everytown Rsch. & Pol'y, *Five Things to Know About Crime Guns, Gun Trafficking, and Background Checks* (May 24, 2021).

FFLs were on this list.[11] Unsurprisingly, although New York gun dealers account for some guns recovered in connection with criminal investigations in New York State, the majority come from other states,[12] and particularly from states in the "Iron Pipeline," a route up the Eastern Seaboard that brings guns from states with lax regulation to states like New York.[13]

In neighboring New Jersey, the statistics are equally striking. Although New Jersey is a source state for only 0.2% of crime guns recovered in the U.S. in 2022, 83% of traced crime guns recovered in New Jersey during the same time period originated from other States, with a wide majority originating from states in the Iron Pipeline.[14]

Massachusetts' experience similarly illustrates the problem of interstate gun trafficking. The Bay State is widely recognized as having

---

[11] Nick Penzenstadler, *Gun Shops That Sell the Most Guns Used in Crime Revealed in New List*, USA Today (Feb. 15, 2024).

[12] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Report: New York* (2023).

[13] Gregor Aisch & Josh Keller, *How Gun Traffickers Get Around State Gun Laws*, N.Y. Times (Nov. 13, 2015).

[14] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Trace Data: New Jersey – 2022* (last reviewed Sept. 27, 2023).

some of the most comprehensive and robust gun safety laws in the country.[15] Thus, while Massachusetts was a source state for only 0.3% of the crime guns recovered in the U.S. in 2022,[16] 63% of traced crime guns recovered in Massachusetts originated from other States,[17] including those located along the Iron Pipeline.

The experience of West Coast states is no different. For example, California is generally recognized as a leader across the country for strong gun safety laws. Yet in 2022, law enforcement recovered just over 39,000 guns in the Golden State that originated from other states—over two-thirds (approximately 69.4%) of the firearms recovered in California that year.[18]

---

[15] *See* Giffords Law Center to Prevent Gun Violence, *Massachusetts Gun Laws* (n.d.); Everytown Rsch. & Pol'y, *Gun Laws in Massachusetts* (last updated Jan. 4, 2024).

[16] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Number of Firearms Sourced and Recovered in the United States and Territories* (Excel spreadsheet), *in Firearms Trace Data – 2022* (last reviewed Oct. 11, 2023). These are the most recent data presently available.

[17] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Trace Data: Massachusetts – 2022* (last reviewed Sept. 27, 2023).

[18] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Trace Data: California – 2022* (last reviewed Sept. 27, 2023).

**B.    The Final Rule Properly Implements Congress's Amended Definition of "Engaged in the Business."**

Contrary to the district court's reasoning, the Final Rule is an exercise of ATF's inherent authority to amend its own regulations to implement the broadened definition of "engaged in the business" promulgated by Congress in the BSCA. That is a function explicitly authorized by 18 U.S.C. § 926(a); namely, a "rule[] [or] regulation[] . . . necessary to carry out the provisions" of the GCA. In that capacity, the Final Rule is fully consistent with the legislative mandate of the BSCA.

For example, the Final Rule incorporates and implements the BSCA's change to the definition of "engaged in the business" that replaced the language "with the principal objective of livelihood or profit" in 18 U.S.C. § 921(a)(21)(C) with "to predominantly earn a profit." *See* 136 Stat. 1324-25. The Final Rule helpfully clarifies the new statutory language by providing examples of fact patterns that would create a rebuttable presumption of an intent "to predominantly earn a profit." 89 Fed. Reg. at 29,091-92.

In addition, the Final Rule's clarification that a person may satisfy the "to predominantly earn a profit" definition under 18 U.S.C. § 921(a)(21)(C) "even if the person does not actually obtain the intended

pecuniary gain from the sale or disposition of firearms," 89 Fed. Reg. at 29,091, makes sense in light of the statutory definition, which speaks only to intent, not actual sale. *See* 18 U.S.C. § 921(a)(22) ("The term 'to predominately earn a profit' means that the *intent* underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other *intents . . . .*" (emphasis added)). Reading in a profit requirement therefore would be contrary to the plain language of the statute. It would also be inconsistent with the purpose of the BSCA, which was intended to broaden the definition of "engaged in the business"— a purpose not furthered by requiring the ATF to engage in the type of detailed financial analysis necessary to determine whether reporting on profit is accurate. The Final Rule appropriately recognizes that, even where an individual transferring guns receives a benefit other than financial profit, the behavior—and the intent behind it—still falls within the range of activities requiring oversight under the BSCA.

The Final Rule also clarifies that firearms dealing may occur "wherever, or through whatever medium [sales] may be conducted." *See* 89 Fed. Reg. at 29,090 (definition of "dealer"); *see also id.* (nonexclusive list of examples of ways sales are conducted, including through gun shows,

auction houses, mail orders, and through internet or other electronic means). This is consistent with the text of the BSCA and the GCA, neither of which contains language suggesting that being "engaged in the business" requires a storefront. This element of the Final Rule is consistent with the purpose of the BSCA to broaden the definition of "engaged in the business," and appropriately recognizes that, in the modern marketplace, firearms dealing is not limited to sales at brick-and-mortar stores.

The Final Rule's definition of the statutory term "personal collection" is also consistent with the BSCA and the broader language of the GCA. The Rule makes clear that the term encompasses firearms "accumulate[d] for study, comparison, exhibition (e.g., collecting curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby," but not firearms accumulated "for the purpose of resale with the predominant intent to earn a profit" or "primarily for personal protection." 89 Fed. Reg. at 29,090. At the district court, plaintiffs argued that this definition unfairly excludes firearms purchased for "personal protection," because "'personal protection' is the reason that most people acquire firearms in the first place." (Pls.' Mot. for TRO and/or Prelim. Inj. at 23 (citation omitted)). But had ATF defined "personal collection" to include firearms

purchased "primarily for personal protection," it would be at odds with the text of the statute, which narrowly defines a "collector" as a person "who acquires, holds, or disposes of firearms as curios or relics." 18 U.S.C. § 921(a)(13). This is also consistent with the ordinary meaning of the term "collection." *Collection, Merriam-Webster's Collegiate Dictionary* 243 (11th ed. 2003) ("an accumulation of objects acquired for study, comparison, or exhibition or as a hobby"). Importantly, the Rule states explicitly that "nothing in this definition shall be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use." 89 Fed. Reg. at 29,090.

## C. The Final Rule Promotes Public Safety by Requiring More Sellers to Obtain Licenses, Conduct Background Checks, and Keep Transaction Records.

The Final Rule furthers Congress's goal of curbing illegal gun trafficking by providing detailed guidance regarding compliance. For people who are law-abiding and who wish to sell guns regularly or for profit, the Final Rule clarifies that they must be federally licensed, run background checks on gun buyers, keep transaction records, and respond to ATF trace requests, all of which will make it more difficult for people who are likely to misuse weapons to buy guns.

Under the GCA, a purchaser must appear in person with valid photo identification, and the dealer must verify their identity. *Abramski*, 573 U.S. at 172. The dealer must then submit the purchaser's name, age, and residential address to the National Instant Background Check System ("NICS") and wait to receive confirmation that the purchaser is not prohibited before completing the sale. *Id*. at 172-73. And finally, the dealer must keep certain records, including ATF Form 4473, which is filled out partly by the dealer and partly by the purchaser. *Id*. at 173-74.

ATF Form 4473 requires dealers to record information about the gun (including the manufacturer, model, and serial number), as well as information about the purchaser (name, date of birth, and other identifying information).[19] Importantly, Form 4473 also requires the purchaser to affirm that they are the actual purchaser (and not buying the gun for another person). Form 4473 also requires purchasers to answer questions relevant to determining whether any of the federal prohibitors on firearm possession apply, including whether they have been convicted of a felony, are an unlawful user of controlled substances, or have ever been commit-

---

[19] *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, <u>ATF Form 4473, Firearms Transaction Record</u> (last revised Aug. 2023).

ted to a mental institution. *Id.* The purchaser then "must sign a certification declaring his answers 'true, correct and complete.'" That certification provides that the signatory 'understand[s] that making any false . . . statement' respecting the transaction—and, particularly, 'answering "yes" to [the actual transferee/buyer question] if [he is] not the actual buyer'—is a crime 'punishable as a felony under Federal law.'" *Abramski*, 573 U.S. at 174 (citations omitted). Form 4473 then becomes an important transaction record used to determine the last known purchaser of a gun later recovered in connection with a criminal investigation.[20]

By clarifying when gun sellers must comply with federal regulatory requirements, including the requirement to complete a Form 4473, the Final Rule makes it harder for gun traffickers to operate and will ensure that when guns are used in crimes, law enforcement can promptly discover where those guns came from, whether they were illegally trafficked, and, if so, by whom.

---

[20] *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *How ATF Traces Firearms* (Aug. 2018).

## CONCLUSION

This Court should reverse the district court's order granting a preliminary injunction against enforcement of the Final Rule against plaintiffs.

Dated: New York, New York
September 24, 2024

Respectfully submitted,

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
DAVID C. KRAVITZ
*State Solicitor*
ANNA LUMELSKY
*Deputy State Solicitor*
CHRISTINE DOKTOR
*Director*
*Gun Violence Prevention Unit*
RYAN T. MINGO
*Deputy Director*
*Gun Violence Prevention Unit*

One Ashburton Place
Boston, MA 02108
(617) 963-2427
david.kravitz@mass.gov

LETITIA JAMES
*Attorney General*
*State of New York*
BARBARA D. UNDERWOOD
*Solicitor General*
MOLLY THOMAS-JENSEN
*Special Counsel*

By:  */s/ Ester Murdukhayeva*
ESTER MURDUKHAYEVA
*Deputy Solicitor General*

28 Liberty Street
New York, NY 10005
(212) 416-6279
ester.murdukhayeva@ag.ny.gov

*(Counsel listing continues on next page.)*

18

ROB BONTA
  *Attorney General*
  *State of California*
1300 I St.
Sacramento, CA 95814

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Fl.
Denver, CO 80203

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capital Ave.
Hartford, CT 06106

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French St.
Wilmington, DE 19801

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawai'i*
425 Queen St.
Honolulu, HI 96813

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
115 S. LaSalle St.
Chicago, IL 60603

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Pl.
Baltimore, MD 21202

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
75 Rev. Dr. Martin Luther
  King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson St.
Carson City, NV 89701

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market St.
Trenton, NJ 08625

*(Counsel listing continues on next page.)*

Joshua H. Stein
  *Attorney General*
  *State of North Carolina*
114 W. Edenton St.
Raleigh, NC 27603

Ellen F. Rosenblum
  *Attorney General*
  *State of Oregon*
1162 Court St. NE
Salem, OR 97301

Michelle A. Henry
  *Attorney General*
  *Commonwealth of*
    *Pennsylvania*
Strawberry Sq., 16th Fl.
Harrisburg, PA 17120

Peter F. Neronha
  *Attorney General*
  *State of Rhode Island*
150 S. Main St.
Providence, RI 02903

Charity R. Clark
  *Attorney General*
  *State of Vermont*
109 State St.
Montpelier, VT 05609

Robert W. Ferguson
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

Joshua L. Kaul
  *Attorney General*
  *State of Wisconsin*
17 W. Main St.
Madison, WI 53703

Brian L. Schwalb
  *Attorney General*
  *District of Columbia*
400 6th St., NW
Washington, D.C. 20001

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 3,488 words and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)-(7) and the corresponding local rules.

_/s/ Emily Paule_____

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Court's CM/ECF system on September 24, 2024. Service will be effectuated by the Court's electronic notification system upon all parties and counsel of record.

Dated:  New York, New York
        September 24, 2024

*/s/ Ester Murdukhayeva*
