No. 24-10612

# In the United States Court of Appeals
## for the Fifth Circuit

State of Texas; State of Louisiana; State of Mississippi; State of Utah; Jeffrey W. Tormey; Gun Owners of America, Incorporated; Gun Owners Foundation; Tennessee Firearms Association; Virginia Citizens Defense League,
*Plaintiffs-Appellees*,

*v.*

Bureau of Alcohol, Tobacco, Firearms and Explosives; United States Department of Justice; Merrick Garland, in his official capacity as Attorney General of the United States; Steven Dettelbach, in his official capacity as Director of Bureau of Alcohol, Tobacco, Firearms and Explosives,
*Defendant-Appellants.*

On Appeal from the United States District Court
Northern District of Texas,
Case No. 2:24-cv-00089-Z

**BRIEF FOR *AMICI CURIAE* NATIONAL ASSOCIATION FOR GUN RIGHTS, INC. & TEXAS GUN RIGHTS, INC. IN SUPPORT OF PLAINTIFF-APPELLEES**

(*Counsel Listed on Inside Cover*)

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

Richard M. Esenberg
Lucas T. Vebber
Skylar Croy
   *330 East Kilbourn Avenue*
   *Suite 725*
   *Milwaukee, WI 53202*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1, in addition to those listed in the briefs of the parties, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

*Amici*: National Association for Gun Rights, Inc. and Texas Gun Rights, Inc. are both membership-based and donor-supported nonprofits. Neither have any parent corporation, and no publicly held corporation owns more than 10 percent of either's stock.

*Counsel for Amici*: Skylar Croy, Lucas T. Vebber, and Richard M. Esenberg of the Wisconsin Institute for Law & Liberty, Inc. ("WILL").

Dated: November 22, 2024

*s/ Skylar Croy*
SKYLAR CROY

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ............................................................................1

SUMMARY OF ARGUMENT................................................................................2

ARGUMENT .............................................................................................................3

    I.   The judicial power is broad, especially when exercised consistently with a statute. .........................................................................3

    II.  The Administrative Procedure Act explicitly authorizes universal relief. ......................................................................................................6

    III. The District Court did not craft an overly broad preliminary injunction. ..............................................................................................9

CONCLUSION......................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*
   78 F.4th 210 (5th Cir. 2023) ............................................ 8, 13, 14, 15

*Brown v. Bd. of Educ.*
   349 U.S. 294 (1955)................................................................................10

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*
   98 F.4th 220 (5th Cir. 2024) ............................................ 13, 15, 16

*Cargill v. Garland*
   57 F.4th 447 (5th Cir. 2023) ........................................................9, 14

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*
   144 S. Ct. 2440 (2024)................................................................14, 15

*Davis v. East Baton Rouge Parish Sch. Bd.*
   721 F.2d 1425 (5th Cir. 1983).......................................................10

*Franciscan All., Inc. v. Becerra*
   47 F.4th 368 (5th Cir. 2022) ..........................................................15

*Griffin v. HM Fla.-ORL, LLC*
   144 S. Ct. 1 (2023)..............................................................................12

*Harmon v. Thornburgh*
   878 F.2d 484 (D.C. Cir. 1989) ......................................................15

*Lemon v. Kurtzman*
   411 U.S. 192 (1973)................................................................10, 11

*Milliken v. Bradley*
   418 U.S. 717 (1974)................................................................................10

*Milliken v. Bradley*
   433 U.S. 267 (1977)................................................................................11

*Nebraska v. Biden*
   52 F.4th 1044 (8th Cir. 2022)........................................................11

*O.A. v. Trump*
   404 F. Supp. 3d 10 (D.D.C. 2019) ..............................................14

*Rodgers v. Bryant*
    942 F.3d 451 (8th Cir. 2019) ..........................................................16
*Tex. Gun Rights, Inc. v. ATF*
    697 F. Supp. 3d 593 (N.D. Tex. 2023) ............................................ 7
*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*
    110 F.4th 762 (5th Cir. 2024) ....................................................9, 15
*Texas v. ATF*
    2024 WL 2967340 (N.D. Tex. June 11, 2024) ................................ 8
*Texas v. United States*
    809 F.3d 134 (5th Cir. 2015) .......................................................... 9
*United Steel v. Mine Safety & Health Admin.*
    925 F.3d 127 (D.C. Cir. 2019) .......................................................14
*Youngstown Sheet & Tube Co. v. Sawyer*
    343 U.S. 579 (1952) .......................................................................12

**Statutes and Ordinances**

5 U.S.C. § 705 ..............................................................................8, 13

5 U.S.C. § 706(2) ...............................................................................14

**Other Authorities**

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev.
    933, 1012–13 (2018) .....................................................................13

Mila Sohoni, *The Lost History of the "Universal" Injunction*, 133
    Harv. L. Rev. 920 (2020) ..............................................................13

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev.
    1121, 1173 (2020) .........................................................................14

**Constitutional Provisions**

U.S. Const. art. III, § 1 ....................................................................... 9

U.S. Const. art. III, § 2 ......................................................................10

No. 24-10612

## INTEREST OF *AMICI CURIAE*[1]

The National Association for Gun Rights, Inc. ("NAGR") and Texas Gun Rights, Inc. ("TGR") are membership-based and donor-supported nonprofits whose sole purpose is to protect every American's right to keep and bear arms. With hundreds of thousands of members across the United States, NAGR regularly litigates and files amicus briefs to defend Second Amendment rights. TGR similarly has members all across Texas. Among other things, NAGR and TGR have successfully challenged unconstitutional rules promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). *See, e.g.*, *Tex. Gun Rights, Inc. v. ATF*, 697 F. Supp. 3d 593 (N.D. Tex. 2023).

The new rule at issue in this action will drastically change how firearms are acquired, affecting NAGR, TGR, and their members. As such, NAGR and TGR are interested in ensuring that this Court reaches a correct outcome in a well-reasoned opinion.

---

[1] The undersigned counsel certifies that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amici* and their counsel have contributed money for this brief.

In particular, NAGR and TGR are concerned about the scope of relief. The District Court issued a preliminary injunction, but the injunction does not protect their members. *See Texas v. ATF*, 2024 WL 2967340 (N.D. Tex. June 11, 2024). It effectively creates two classes of Americans: those who must comply with the new ATF rule and those who are not so required. Even still, ATF complains that the injunction is too broad. Doc. 48:61 It says that relief should be limited only to those plaintiffs with standing and complains that it does not know all members of the associational plaintiffs. NAGR and TRG seek to explain why the District Court's injunction is not too broad—if anything, the injunction is too narrow.

## SUMMARY OF ARGUMENT

This Court should not hold that the preliminary injunction is overly broad. The plaintiffs (various states and associations) moved the District Court for a stay under 5 U.S.C. § 705. ECF 37:30. Section 705 authorizes a district court to "postpone" the effective date of a rule. A stay under § 705 "temporarily voids the challenged authority" entirely. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023), *rev'd & remanded on other grounds*, 602 U.S. 367 (2024).

Stated differently, a stay functionally negates the very existence of a rule altogether, i.e., it is a "temporary form of vacatur." *See id.* Vacatur is inherently universal—it affords relief beyond the plaintiffs. In this circuit, like others, vacatur is the "default rule." *See id.* at 255 (quoting *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion)). Indeed, this Court recently indicated that vacatur, at least at the end of a successful action, is not merely "statutorily permissible" but "required." *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 780 (5th Cir. 2024). If anything, the District Court, in this action, erred by crafting an injunction that was too narrow.

## ARGUMENT

**I. The judicial power is broad, especially when exercised consistently with a statute.**

As a preliminary matter, a district court is constitutionally vested with the "judicial Power of the United States." U.S. Const. art. III, § 1; *see also Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) ("[T]he Constitution vests . . . [d]istrict [c]ourt[s] with 'the judicial Power of the United States.' That power is not limited to the district wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction.").

The judicial power extends to "all Cases, in Law and Equity," arising under federal law. U.S. Const. art. III, § 2. Injunctions are a form of equitable relief, and in *Brown v. Board of Education*, the United States Supreme Court recognized that "[t]raditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." 349 U.S. 294, 300 (1955). Indeed, this Court has emphasized that in equity, a district court has "broad" remedial powers, reviewed under the deferential abuse of discretion standard. *Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1439 (5th Cir. 1983); *see also Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (plurality opinion) ("In shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow.").

Equitable relief is supposed to be limited by the "nature" of the constitutional or statutory violation; however, this principle is not as limiting as it may seem. *See Milliken v. Bradley* (*Milliken I*), 418 U.S. 717, 750 (1974). As the United States Supreme Court has emphasized, "[t]he . . . principle . . . means simply that federal-court decrees must directly address and relate to the constitutional [or

statutory] violation itself." *Milliken v. Bradley* (*Milliken II*), 433 U.S. 267, 281–82 (1977). Accordingly, a decree cannot be "aimed at eliminating a condition that does not violate the [law];" however, "where . . . a . . . violation has been found, the remedy does not 'exceed' the violation if the remedy is tailored to cure the 'condition that offends [the law].'" *Id.* at 282 (quoting *Milliken I*, 418 U.S. at 738).

Additionally, courts in equity favor "workable" relief—i.e., relief that is not difficult to administer. *See Lemon*, 411 U.S. at 200. Universal relief is often more workable. *See Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (explaining universal relief was favored because one plaintiff provided "nationwide" student-related services and narrower relief would create workability problems).

At bottom, the judicial power is broad, at least when it is exercised consistently with a statute. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring in the judgment) (explaining when the President acts with congressional approval, "his [or her] authority is at its maximum, for it includes all that he [or she] possess in his [or her] own right plus all that Congress can delegate").

This understanding of judicial power makes particularly good sense in light of the modern administrative state. If Congress can functionally delegate legislative power to the executive, which can then be used to promulgate rules that bind every court in this nation, Congress can also create statutes authorizing the judiciary to police the administrative state.

## II. The Administrative Procedure Act explicitly authorizes universal relief.

In this action, universal relief is authorized and arguably required by the Administrative Procedure Act ("APA"). This Court would seemingly need to hold 5 U.S.C. § 705 unconstitutional (at least partly) to reason that universal relief is inappropriate. This action, therefore, is unlike more controversial uses of universal relief that do not involve the APA. *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 1 & n.1 (2023) (statement of Kavanaugh, J.) (explaining the APA "expressly authorizes" vacatur, so "courts *do* hold the power" to "set aside" or "strike down" an administrative rule) (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012–13 (2018)). *See generally* Mila Sohoni, *The Lost History of the "Universal" Injunction,* 133 Harv. L. Rev. 920

(2020) (rebutting the myth that nationwide injunctions were invented by judicial fiat in the 1960s).

Two arguments support this conclusion.

1. 5 U.S.C. § 705 contemplates restricting an agency by "postpon[ing] the effective date of an agency action . . . ." This Court has expressed "strong[] doubt" that this language should be construed narrowly. *See All. for Hippocratic Med.*, 78 F.4th at 256. Nothing about this language indicates that relief must be limited to the plaintiffs; instead, this language is focused entirely on the agency's action. *See Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("Nothing in the text of Section 705, nor of 706, suggests that either preliminary or ultimate relief under the APA need be limited to CCST or its members."). What would "postpon[ing] the effective date of an agency action" even look like if a rule were postponed only for a plaintiff? *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019) ("[T]he Court would be at a loss to understand what it would mean to vacate a regulation, but only as applied to the parties before the Court.").

2. A closely related statute is also helpful. If the plaintiffs ultimately prevail, 5 U.S.C. § 706(2) provides that the District Court

"shall . . . set aside" the new rule. "Set aside" means "vacate[]" entirely—as if to never have existed in the first place. *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2462 (2024) (Kavanaugh, J., concurring); Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1173 (2020) ("The term 'set aside' means invalidation—and an invalid rule may not be applied to anyone."). Accordingly, vacatur, at least at the end of a successful action, is the "default rule." *All. for Hippocratic Med.*, 78 F.4th at 255 (quoting *Cargill*, 57 F.4th at 472); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). As the D.C. Circuit has explained, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see also Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation"). In fact, this Court has gone a step further, stating that vacatur, at the end of a successful action, is not merely "statutorily

permissible" but "required." *Tex. Med. Ass'n*, 110 F.4th at 780. When 5 U.S.C. § 705 is read in light of § 706(2), § 705 authorizes a "temporary form of vacatur." *See All. for Hippocratic Med.*, 78 F.4th at 254; *see also Career Colls.*, 98 F.4th at 255 ("[W]e conclude that the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action."). In summary, to quote Justice Brett Kavanaugh, "[t]he text and history of the APA authorize vacatur. . . . Over the decades, this Court has affirmed countless decisions that vacated agency actions, including agency rules." *Corner Post*, 144 S. Ct. at 2462–63.

## III. The District Court did not craft an overly broad preliminary injunction.

Against this backdrop, the District Court did not err by crafting an allegedly overly broad preliminary injunction. *See Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) ("[A] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). If anything, the District Court erred by not postponing the effective date of the new rule, which would have inherently given relief beyond the plaintiffs. While ATF complains about

workability, such concerns actually favor broader—not narrower—relief. Nothing about universal relief would have created workability concerns at all. ATF cannot have its cake and eat it, too. It cannot say, on the one hand, that narrow relief is unworkable (because it does not know all of the members of the associational plaintiffs) and, on the other hand, lament that universal relief (which would create a bright line rule) is terrible. *See Career Colls.*, 98 F.4th at 255 ("The Department's protests against nationwide relief are incoherent in light of its use of the Rule to prescribe uniform federal standards.").

## CONCLUSION

This Court should affirm the District Court's decision, paying close attention to the scope of the preliminary injunction and ATF's erroneous argument that it is too broad.

Dated: November 22, 2024.

                                            Respectfully Submitted,

                                            WISCONSIN INSTITUTE FOR
                                            LAW & LIBERTY, INC.

                                            *s/ Skylar Croy*
                                            Skylar Croy
                                              *Counsel of Record*
                                            Richard M. Esenberg
                                            Lucas T. Vebber

                              330 East Kilbourn Avenue
                              Suite 725
                              Milwaukee, WI 53202
                              Telephone: (414) 727-9455
                              Facsimile: (414) 727-6385
                              Rick@will-law.org
                              Lucas@will-law.org
                              Skylar@wil-law.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 2068 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

                                                Dated: November 22, 2024

                                                */s/ Skylar Croy*
                                                SKYLAR CROY

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: November 22, 2024

*/s/ Skylar Croy*
SKYLAR CROY