No. 24-10612

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――――

STATE OF TEXAS; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF UTAH; JEFFREY W. TORMEY; GUN OWNERS OF AMERICA, INCORPORATED; GUN OWNERS FOUNDATION; TENNESSEE FIREARMS ASSOCIATION; VIRGINIA CITIZENS DEFENSE LEAGUE,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, in his official capacity as Attorney General of the United States; STEVEN DETTELBACH, in his official capacity as Director of Bureau of Alcohol, Tobacco, Firearms and Explosives,

Defendants-Appellants.

―――――――――

On Appeal from the United States District Court
for the Northern District of Texas

―――――――――

## REPLY BRIEF FOR APPELLANTS

―――――――――

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

LEIGHA SIMONTON
  *United States Attorney*

MICHAEL S. RAAB
BRAD HINSHELWOOD
KEVIN KENNEDY
  *Attorneys, Appellate Staff
  Civil Division, Room 7256
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-7823*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................1

ARGUMENT ...................................................................................................2

I.      Plaintiffs Lack Standing .....................................................................2

II.     Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits for the Issues Addressed by the District Court ..........................................9

        A.      Federal Law Does Not Require "Actual Purchases and Resales" or "Actual Profit" Before a License Is Required .........................9

        B.      The Rule's Understanding of "Personal Collection" Tracks the Statute ...............................................................................14

        C.      Plaintiffs' Remaining Arguments Against the Presumptions Are Derivative of Their Other Arguments .........................................17

III.    Plaintiffs' Other Arguments Lack Merit ............................................. 19

IV.     The District Court Erred in Its Assessment of the Equities and the Scope of Relief .................................................................................. 23

CONCLUSION .......................................................................................... 27

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*Barber v. Thomas,*
   560 U.S. 474 (2010) ......................................................................... 20

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.,*
   98 F.4th 220 (5th Cir. 2024) ........................................................... 18

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ...................................................................... 4, 6

*Dalton v. Specter,*
   511 U.S. 462 (1994) ......................................................................... 22

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ......................................................................... 20

*El Paso County v. Trump,*
   982 F.3d 332 (5th Cir. 2020) ......................................................... 1, 8

*Food & Drug Admin. v. Alliance for Hippocratic Med.,*
   602 U.S. 367 (2024) ........................................................................... 8

*Friends of the Earth, Inc. v. Chevron Chem. Co.,*
   129 F.3d 826 (5th Cir. 1997) ............................................................. 7

*Funeral Consumers All., Inc. v. Service Corp. Int'l,*
   695 F.3d 330 (5th Cir. 2012) ............................................................. 7

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ........................................................................... 7

*Johnson v. United States,*
   576 U.S. 591 (2015) ......................................................................... 23

*Mallory v. Norfolk S. Ry. Co.,*
   600 U.S. 122 (2023) ......................................................................... 22

*McRorey v. Garland,*
   99 F.4th 831 (5th Cir. 2024) ....................................................... 21, 21

*Mississippi State Democratic Party v. Barbour,*
   529 F.3d 538 (5th Cir. 2008) ............................................................. 6

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........................................................................................ 2

*National Rifle Ass'n v. Brady*,
914 F.2d 475 (4th Cir. 1990) ...................................................... 17

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ................................................................. 20, 21

*Pennsylvania ex rel. Shapp v. Kleppe*,
533 F.2d 668 (D.C. Cir. 1976) ...................................................... 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................... 5

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................. 1, 2, 4

*United States v. Biswell*,
406 U.S. 311 (1972) ..................................................................... 22

*United States v. Gross*,
451 F.2d 1355 (7th Cir. 1971) ...................................................... 13

*United States v. King*,
735 F.3d 1098 (9th Cir. 2013) ...................................................... 14

*United States v. Nadirashvili*,
655 F.3d 114 (2d Cir. 2011) ......................................................... 14

*United States v. Shipley*,
546 F. App'x 450 (5th Cir. 2013) ................................................. 14

*United States v. Shirling*,
572 F.2d 532 (5th Cir. 1978) ........................................................ 13

*United States v. Valdes*,
681 F. App'x 874 (11th Cir. 2017) ............................................... 14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ..................................................................... 23

**Statutes:**

Act of May 22, 1794, ch. 33, § 1, 1 Stat. 369, 369 ............................................21

Firearms Owners' Protection Act,
  Pub. L. No. 99-308, § 101, 100 Stat. 449, 450 (1986) ............................... 9, 13

18 U.S.C. § 921(a)(13) ......................................................................... 15

18 U.S.C. § 921(a)(21)(C) ............................... 1, 3, 5, 9, 10, 11, 12, 14, 19

18 U.S.C. § 921(a)(22) .............................................................. 10, 11, 12

18 U.S.C. § 921(a)(23) ..................................................................... 11

18 U.S.C. § 923(a)(1) ....................................................................... 9

18 U.S.C. § 926(a) ........................................................................ 17

Pub. L. No. 113-6, 127 Stat. 198, 248 (2013) ......................................15

**Regulations:**

27 C.F.R. § 478.11 .............................................................. 14, 15, 16, 25

27 C.F.R. § 478.13 ......................................................................... 16

27 C.F.R. § 478.13(a) ..................................................................... 24

27 C.F.R. § 478.13(h) ..................................................................... 23

27 C.F.R. § 478.57 ......................................................................... 25

27 C.F.R. § 478.57(b) ................................................................... 7, 20

27 C.F.R. § 478.57(c) ..................................................................... 19

27 C.F.R. § 478.57(d) ..................................................................... 19

27 C.F.R. § 478.78(b) ................................................................... 7, 20

27 C.F.R. § 478.78(c) ..................................................................... 19

27 C.F.R. § 478.78(d) ........................................................................................ 19

**Legislative Materials:**

H.R. Rep. No. 99-495 (1986) .............................................................................13

S. Rep. No. 98-583 (1984) .................................................................................13

**Other Authority:**

89 Fed. Reg. 28,968 (Apr. 19, 2024) ...................................... 2, 3, 3-4, 4, 7, 8, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' brief fails to establish standing or show a likelihood of success on the merits. All plaintiffs—whether a named plaintiff, an identified association member, or an anonymous member whose purported conduct is described only through hearsay—offer only vague allegations that do not demonstrate an intention to engage in a course of conduct "arguably proscribed" the Rule, much less that "the threat of future enforcement … is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014). And the States press a boundless theory of standing—already rejected by this Court—that would confer standing to sue over any federal policy that indirectly affects tax revenue. *El Paso County v. Trump*, 982 F.3d 332, 340-41 (5th Cir. 2020).

On the merits, plaintiffs ask this Court to hold that licensure is not required until after actual sales have occurred and actual profit has been realized. Until the decision below, no court has accepted those premises in the nearly 40 years since the relevant definitions were first enacted. Those definitions instead require licensure whenever someone has devoted "time, attention, and labor to dealing in firearms as a regular course of trade or business" with the predominant intent to "earn a profit through the repetitive purchase and resale of firearms," 18 U.S.C. § 921(a)(21)(C), regardless of whether actual sales or actual profit has resulted from those efforts. Similarly, the decision below is the first to adopt plaintiffs' expansive reading of "personal collection" as encompassing any firearm a person owns, which would

render the licensing requirement all but meaningless.  The Rule instead properly recognizes that a "personal collection" is a collection of "firearms that a person accumulates for study, comparison, exhibition … or for a hobby."  89 Fed. Reg. 28,968, 29,090 (Apr. 19, 2024) (27 C.F.R. § 478.11).  That follows from the plain meaning of "collection," as well as from the statute's discussion of a "collector."

Plaintiffs' other arguments are largely derivative of their errors on the merits and, in many instances, were not embraced or addressed by the district court.  And at a minimum, plaintiffs have provided no justification for extending the injunction to the entire Rule in the absence of any finding from the district court that many of the Rule's provisions were likely unlawful.

## ARGUMENT

### I.    Plaintiffs Lack Standing

No plaintiff has made the "clear showing" that they are "likely to establish each element of standing" necessary to obtain a preliminary injunction.  *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

**A.**  Tormey is the only named plaintiff who asserts that the Rule might someday apply to him.  Pre-enforcement standing requires a clear showing that Tormey has "an intention to engage in a course of conduct" that is "arguably proscribed" by that statute or regulation, and that "the threat of future enforcement … is substantial."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014).

2

Here, the statute requires licensure when someone "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business" with the predominant intent to "earn a profit through the repetitive purchase and resale of firearms."  18 U.S.C. § 921(a)(21)(C).  The Rule repeats these requirements.  89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(a)).

Tormey nowhere alleges that his conduct even arguably meets either of these requirements.  Nor do plaintiffs contend that any of the Rule's presumptions related to these two statutory requirements arguably apply to Tormey's conduct.

That failure undermines both arguments plaintiffs actually advance.  First, plaintiffs assert that Tormey has "plans to sell … self-defense firearms" and that the Rule understands the statute's "personal collection" exception to exclude firearms accumulated primarily for self-defense, and from this conclude that Tormey's conduct is subject to the Rule.  Br. 8-9.  But the fact that some aspects of Tormey's conduct do not fall within the "personal collection" exception does not mean that those activities require a license; even where the personal collection exception does not apply, a license is only required when someone "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business" with the predominant intent to "earn a profit."  18 U.S.C. § 921(a)(21)(C).  And as noted, plaintiffs make no argument that Tormey has even arguably alleged that he meets these requirements as the Rule understands them.

3

Second, plaintiffs focus on the Rule's statement that "'even a single firearm transaction or offer to engage in a transaction'" may require a license to contend that Tormey's conduct "falls in the heartland of the Rule."  Br. 9 (quoting 89 Fed. Reg. at 29,091).  Plaintiffs omit the remainder of the quoted sentence, which explains that such a single transaction must be "combined with other evidence," 89 Fed. Reg. at 29,091, demonstrating that the person meets the statutory requirements.  Plaintiffs also ignore the Rule's subsequent statement that "a single isolated firearm transaction," absent "other evidence" indicative of being "engaged in the business," would "not require a license."  *Id.*  While Tormey need not "confess that he will in fact violate" the Rule, *Susan B. Anthony List*, 573 U.S. at 163, he has made no allegations demonstrating that his conduct could even arguably require a license, and his "subjective fear[s]" are no substitute for such allegations, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

For similar reasons, Tormey faces no substantial threat of enforcement.  Plaintiffs cite no case in which the statute—much less the Rule—has been enforced against anyone remotely comparable to Tormey and, as noted, have not alleged that Tormey's conduct arguably falls within the interpretation announced by the Rule.  Plaintiffs' dismissal of this error because the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) could "chang[e] its mind" in the future (Br. 10) is difficult to follow.  Plaintiffs challenge the interpretation announced in the Rule; if ATF issued some other rule in the future announcing a different interpretation, plaintiffs could

4

attempt to establish standing to challenge that. The salient point is that Tormey has failed to establish standing to challenge the interpretation of the statute actually announced here.

**B.** The plaintiff organizations face these difficulties and more. While plaintiffs acknowledge that they must identify a member with standing, they make little effort to defend their reliance on hearsay statements supposedly made by anonymous "members" of these organizations to meet that requirement. Plaintiffs misstate the objection as limited to a claim that "identified members must be named members." Br. 12. The problem is even more fundamental: even the purported injuries of unnamed members are asserted solely through second-hand hearsay rather than through affidavits from those purportedly injured members. Plaintiffs cite no case allowing an organization to establish standing to obtain a preliminary injunction through such hearsay statements. Without "specific allegations" from "individual affidavits" in lieu of an organization's "self-description[] of [its] membership," *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009), courts cannot ensure the presence of an injured member with standing.

In any event, none of the individuals discussed in the declarations meet the threshold standing requirements. Like Tormey, they describe nothing suggesting that they are arguably devoting "time, attention, and labor to dealing in firearms as a regular course of trade or business" with the predominant intent to "earn a profit" as the Rule understands those requirements. 18 U.S.C. § 921(a)(21)(C). Many of the

hearsay statements of purported Tennessee Firearms Association (TFA) and Virginia Citizens Defense League members that plaintiffs cite (Br. 11-12), as well as the statements of TFA's Richard Archie, are nothing more than generalized assertions that such members "will be impacted because they have in the past bought and resold firearms" or "are unsure" about their obligations, ROA.472; *accord* ROA.477; ROA.797-99; ROA.838, while others rest on plain misreadings of the Rule and conjecture about what might occur if the purported member "were to" engage in certain conduct the member does not allege that they have previously engaged in or will engage in, ROA.837.  Those generalized allegations and subjective concerns cannot ground standing.  *Clapper*, 568 U.S. at 418; *see Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("[S]tanding is not created by a declaration in court pleadings.").

Plaintiffs also cite (Br. 11) hearsay statements regarding two Gun Owners of America (GOA) members who are allegedly former licensees.  The district court here did not address the Rule's provisions addressing former licensees, and these allegations have no bearing on standing as to other provisions.  In any event, one declaration describes allegations related to a criminal prosecution a decade before the Rule existed.  ROA.467-68.  Plaintiffs do not assert that that individual faces any injury from the Rule, and events related to that individual say nothing about whether others face any prospect of enforcement of the Rule.  Similarly, another hearsay statement claims that a member "fears that they will be unable lawfully to dispose of"

"over 1,000" firearms accumulated while the member was a federal firearms licensee. ROA.465.  Plaintiffs do not explain how someone could sell "over 1,000" firearms for profit without being "engaged in the business" under the statute, much less how that is altered by the Rule.  But in any event, as plaintiffs acknowledge, such former licensees are subject to the same prohibitions on unlicensed dealing as the general public.  Br. 39.  The Rule does not create any new obligations on former licensees.  It instead provides a path by which some former licensees may nevertheless dispose of their inventory in ways that would otherwise require a license.  *See* 89 Fed. Reg. at 29,092 (27 C.F.R. §§ 478.57(b), 478.78(b)).  GOA's unnamed member thus faces no risk of enforcement attributable to the Rule.

Plaintiffs also fail to defend Gun Owners Foundation's (GOF) claim to standing.  GOF lacks traditional members and so must demonstrate that its supporters "elect leadership, serve as the organization's leadership, and finance the organization's activities."  *Funeral Consumers All., Inc. v. Service Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344-45 (1977) (describing these as "indicia of membership").  Plaintiffs argue (Br. 13-14) that monetary donations alone are sufficient but cite no case embracing that proposition.  *See Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (explaining that "*Hunt* looked to who elected the governing body of the organization *and* who financed its activities" (emphasis added)).  Were it otherwise, any organization that receives money could claim associational standing.

7

Regardless, plaintiffs entirely ignore the argument (Gov't Br. 23-24) that GOF failed to identify a supporter with standing to sue. GOF thus lacks standing even if considered equivalent to a membership organization.

**C.** Plaintiffs maintain that the States have standing because the Rule will "reduce the number of people who buy and sell firearms" and "reduce gun show attendance and sales," and thus will reduce tax revenue. Br. 15. Plaintiffs do not attempt to cabin the scope of this theory, which would allow suits over "the unavoidable economic repercussions of virtually all federal policies." *Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668, 672-73 (D.C. Cir. 1976); *see Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 391-92 (2024) (rejecting similarly attenuated theories). This Court and others have thus consistently rejected attempts to premise standing on the "incidental economic impact" of a federal policy on "general tax revenues." *El Paso County v. Trump*, 982 F.3d 332, 340-41 (5th Cir. 2020). And as we explained (Gov't Br. 31), the fact that the States have named particular streams of tax revenue (specifically "sales and use taxes") does not render their allegations any less attenuated, and repeats arguments rejected in *El Paso County. See* 982 F.3d at 359 (Dennis, J., dissenting).

Plaintiffs similarly repeat without significant alteration the points we addressed (Gov't Br. 29-31) in explaining that revenue loss is speculative. They repeat the claim (Br. 15) that fewer firearms sales will occur, but ignore the Rule's analysis showing that the total number of sales is unlikely to decrease, as customers seeking firearms are

likely to divert business to licensed dealers instead. 89 Fed. Reg. at 29,066. Plaintiffs offer no new argument that lost revenue from attendance at gun shows is anything other than speculative, and likewise do not explain why their overall tax revenue is likely to decline from any decrease in gun show attendance in any event. *See* Gov't Br. 30-31.

## II.   Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits for the Issues Addressed by the District Court

Plaintiffs' failure to establish standing is alone sufficient to reverse, but plaintiffs have likewise shown no likelihood of success on the merits.

### A.   Federal Law Does Not Require "Actual Purchases and Resales" or "Actual Profit" Before a License Is Required

Since 1986, Federal law has specified that persons are "engaged in the business" of dealing in firearms—and thus require a license—if they "devote[] time, attention, and labor to dealing in firearms as a regular course of trade or business" with the requisite intent to earn a profit. Firearms Owners' Protection Act, Pub. L. No. 99-308, § 101, 100 Stat. 449, 450 (1986) (FOPA); 18 U.S.C. § 921(a)(21)(C). The point of this statutory scheme is that dealers must be licensed *before* they begin selling firearms to the public. *See* 18 U.S.C. § 923(a)(1) (providing that "[n]o person shall engage in the business of … dealing in firearms … until he has … received a license to do so"). That is why someone who incorporates a gun store and takes other steps to deal in firearms (Gov't Br. 34) must obtain a license before making any sales; they

have undoubtedly satisfied the statutory requirements even before a sale is consummated (and before any profit is earned).

Before the decision below, no court in those nearly 40 years had held that the statute requires either actual sales or actual profits, and multiple courts have rejected those premises. Plaintiffs urge that those decisions are all wrong and read the obligation to obtain a license to attach only at some unspecified point after an individual has engaged in multiple sales and earned some amount of profit—how many sales, or how much profit (or how such profit is to be calculated), plaintiffs do not say. For example, in plaintiffs' view, the new firearms business described above would be able to engage in some unspecified number of unlicensed sales until a point where it has begun to profit (however defined).

No other court has embraced plaintiffs' reading because it is incorrect. The statute provides that a person is "engaged in the business" of selling firearms if they "devote[] time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms," 18 U.S.C. § 921(a)(21)(C), and "to predominantly earn a profit means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain," *id.* § 921(a)(22). The statutory question is thus whether a person devotes effort as a regular course of trade or business to firearms transactions with the predominant purpose of profiting through repeated sales, not whether such sales or profits have already occurred.

10

Plaintiffs read the phrase "the repetitive purchase and resale of firearms" as an independent requirement that must actually occur before the license requirement attaches. Br. 21; *see* Br. 18-19. That ignores the word "through," which makes clear that the phrase describes how a person must intend to earn a profit: "to predominantly earn a profit *through* the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added). And plaintiffs erroneously contend (Br. 21-22) that the government's reading renders the statute's further definition of "to predominantly earn a profit" superfluous. "[T]o predominantly earn a profit" describes the kind of intent a person must have, while "the repetitive purchase and resale of firearms" describes the conduct a person must intend to engage in to earn that profit. And the statutory definition of "to predominantly earn a profit" both specifies the relationship between the predominant intent to earn a profit and "other intents" and provides for exceptions to the intent requirement. *Id.* § 921(a)(22). That definition also distinguishes "predominantly earn a profit" from other provisions of the statute that still use the standard of "principal objective of livelihood and profit" that prevailed before the Bipartisan Safer Communities Act (BSCA). *Id.* § 921(a)(23).

Plaintiffs' misreading of the text is reflected in their struggle to make sense of the statute's express reference to intent. They contend (Br. 24) that the "usage of 'intent'" in the definition "serves to distinguish the type of intent contemplated," but that "[a]ction is needed, too." Specifically, plaintiffs argue that by keying the required intent to "the sale or disposition of firearms," the definition requires completed sales.

11

Br. 20.  But that ignores the "action" Congress specifically said was required: devoting "time, attention, and labor to dealing in firearms," 18 U.S.C. § 921(a)(21)(C), regardless of whether a sale has actually occurred.  Indeed, plaintiffs nowhere explain why Congress would focus on the devotion of "time, attention, and labor to dealing in firearms" if some threshold number of sales, or threshold amount of profit, was all that mattered.

The same flaw undergirds plaintiffs' reliance (Br. 17-20) on a list of nine "indicators"—mostly consisting of statutory terms taken in isolation—that they believe support the notion that the statute requires an unspecified minimum number of completed sales to trigger the licensing requirement.  Plaintiffs, for example, point to "dealing," "engaging," and "regular course of trade or business" as requiring conduct (Br. 17-18), but ignore that the relevant conduct is "devot[ing] time, attention, and labor to dealing in firearms as a regular course of trade or business."  18 U.S.C. § 921(a)(21)(C).

Plaintiffs' refusal to engage with the statutory definition as a whole is underscored by their insistence (Br. 24-25) that the statute's provision that "proof of profit" need not be proven for someone dealing in firearms "for criminal purposes or terrorism," 18 U.S.C. § 921(a)(22), provides by "negative implication" that both actual sales and actual profit are required.  But as we explained (Gov't Br. 40-41), the statutory definition makes clear that the "intent … of obtaining pecuniary gain" determines whether a person engages in conduct "to predominantly earn a profit," 18

U.S.C. § 921(a)(22), and the exception for "criminal purposes or terrorism" means that persons who deal in firearms with those intents can be prosecuted regardless of their lack of profit motive. That exception does not nullify all other components of the statutory definition, which make clear that actual sales—much less actual profit—are not required.

Unable to point to any precedent adopting their view from the nearly 40 years since the relevant statutory definitions were first adopted, plaintiffs suggest that the unbroken precedent contrary to their position is mistaken because those cases do not account for or predate Congress's addition of the statutory definition of "engaged in the business" in 1986. Br. 16, 22-23, 25-27. But that history underscores the error in plaintiffs' approach. Before the 1986 amendment, courts of appeals disagreed about "whether a profit motive is an essential ingredient in determining if one is 'engaged in the business' of firearms." H.R. Rep. No. 99-495, at 12 (1986); *see* S. Rep. No. 98-583, at 8 (1984) (similar). *Compare, e.g.*, *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971) (stating that "the purpose of livelihood or profit" was required), *with United States v. Shirling*, 572 F.2d 532, 534 (5th Cir. 1978) (stating that a person could be engaged in the business "even in the absence of a profit motive"). Congress resolved that debate by enacting the definition of "engaged in the business," which both clarified that the "objective of livelihood and profit" was needed and further specified that that motivation must be the "principal" objective. FOPA § 101, 100 Stat. at 450; *see* H.R. Rep. No. 99-495, at 12 (explaining that "even among those federal appellate

13

courts which have held that a purpose of making a profit must be shown, none have required that profit making be shown as the *primary* or *predominant* purpose").

Nothing in these cases, the legislative history, or the text Congress enacted suggests that actual sales or actual profits are required before a license was needed; instead, Congress's intervention focused on the intent that must be shown. Courts—including this one—have thus uniformly continued to recognize that neither actual sales nor actual profits are required. *United States v. Valdes*, 681 F. App'x 874, 877 (11th Cir. 2017) (per curiam); *United States v. King*, 735 F.3d 1098, 1107 n.8 (9th Cir. 2013); *United States v. Shipley*, 546 F. App'x 450, 454 (5th Cir. 2013) (per curiam); *United States v. Nadirashvili*, 655 F.3d 114, 120-21 (2d Cir. 2011).

## B. The Rule's Understanding of "Personal Collection" Tracks the Statute

"[A] person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms" is not required to obtain a license. 18 U.S.C. § 921(a)(21)(C). Drawing on dictionary definitions, the Rule explains that a "personal collection" encompasses "[p]ersonal firearms that a person accumulates for study, comparison, exhibition … or for a hobby." 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11); *see id.* at 29,038.

Plaintiffs contend that the Rule's definition departs from the statute. They suggest that a "collection" is simply "a number of objects collected according to some

14

unifying principle." Br. 29 (alterations and quotation marks omitted). Plaintiffs do not spell out the implications of that view, but they are clear: anyone who owns firearms has a "personal collection" as described in the statute, regardless of the nature of the firearms or the reason those firearms were obtained. Thus, anyone who owns firearms could sell "all or part" of their firearm inventory at any time without a license, even if that amounted to the devotion of significant effort to hundreds or thousands of firearms sales all done with the intent to profit.

Congress unsurprisingly did not write such a self-defeating statute, and plaintiffs cite no case endorsing their interpretation. The Rule instead recognizes that firearms in a "personal collection" have some special significance apart from simply being firearms: they are acquired "for study, comparison, exhibition, or for a hobby." 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11). That approach is confirmed by the Gun Control Act of 1968 (GCA): a person who assembles and owns a "collection" is a "collector"; the GCA defines a "collector" as a "person who acquires, holds, or disposes of firearms as curios or relics," 18 U.S.C. § 921(a)(13); and such firearms have some unique quality that makes them of interest for reasons other than their use as offensive or defensive weapons, 27 C.F.R. § 478.11. Plaintiffs question the relevance of the regulatory definition of "curios or relics" (Br. 31) but do not explain

how common and unremarkable firearms could constitute "curios or relics."[1]  Nor do they explain why "collector" and "personal collection" should have vastly different meanings: the entire premise of being a "collector"—and developing a "personal collection" of firearms—is that particular firearms are acquired because they have unique qualities apart from their function as firearms.

Plaintiffs likewise incorrectly assert that the Rule narrows the statutory exclusion by "combin[ing]" (Br. 27-28) the statute's exclusion of occasional sales made "for the enhancement of a personal collection" and those made "for a hobby." The Rule expressly extends the exclusion to occasional sales for the "enhancement of a personal collection *or for a hobby*," 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13) (emphasis added), and explains that the exclusion encompasses hobbies such as "noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical re-enactment, or noncommercial firearms safety instruction," *id.* at 29,090 (27 C.F.R. § 478.11).  Plaintiffs do not identify any "hobby" activities they believe the Rule improperly excludes.

Finally, plaintiffs mistake (Br. 29-30) the Rule's creation of evidentiary presumptions with the standards that govern whether someone is or is not "engaged in the business" of dealing in firearms.  As explained, under the Rule, as under the

---

[1] Moreover, Congress expressly required the agency to define "curios or relics," 18 U.S.C. § 921(a)(13), and has locked in the current definition, *see* Pub. L. No. 113-6, 127 Stat. 198, 248 (2013).

statute, persons making only occasional sales to enhance a personal collection or for a hobby are categorically excluded from the licensing requirement. Thus, both before and after the Rule, if the evidence in a proceeding demonstrates that the person's sales fall within the exclusion, they do not require a license. In addition, the Rule recognizes that, where ATF has set forth evidence triggering a presumption that a person is engaged in the business of dealing, that person may rebut that presumption by introducing evidence that their conduct falls within the exception. 89 Fed. Reg. at 29,092.

### C.     Plaintiffs' Remaining Arguments Against the Presumptions Are Derivative of Their Other Arguments

Plaintiffs advance scattershot challenges to ATF's authority to promulgate the Rule. These add nothing to plaintiffs' mistaken statutory arguments.

Plaintiffs contend that the Rule exceeded ATF's rulemaking authority. Br. 34. The GCA expressly authorizes the promulgation of "only such rules and regulations as are necessary to carry out the provisions" of the GCA. 18 U.S.C. § 926(a). ATF explained that the Rule here was necessary both to ensure that ATF regulations "accurately reflect the statutory text" after the BSCA amendments, 89 Fed. Reg. at 29,086, and to address ATF's observation of "a significant level of noncompliance with the GCA's licensing requirements even prior to the BSCA," *id.* at 29,053— noncompliance that continued even after ATF issued guidance in 2016 containing many of the same points as the Rule, *id.*

Plaintiffs chiefly believe that the "noncompliance" ATF has observed is the product of ATF's "misinterpretation of the statute," Br. 45, but that is mistaken for the reasons discussed. Plaintiffs otherwise offer no reason to doubt ATF's determination that the Rule is important for promoting compliance with the statutory requirements. *See National Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990) (explaining that GCA rulemaking grant "almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary'"). Plaintiffs' view that Congress's direct enactment of presumptions in some statutes precludes agencies from creating others, Br. 35, cannot be squared with the numerous cases recognizing that agencies may use their rulemaking authority to create presumptions. Gov't Br. 46.

Similarly, plaintiffs' assertion (Br. 33, 36) of some conflict between the fact-specific nature of the "engaged in the business" inquiry and the Rule's recognition of certain "common fact patterns" that are "strong indicators of engaging in the business of dealing in firearms," 89 Fed. Reg. at 28,991, depends on their misreading of the statute itself. For example, if this Court rejects—as it should—plaintiffs' argument that actual sales or profits are required, then there is no basis for plaintiffs to question presumptions on the ground that they do not "require[] … actual sales or purchases." Br. 36-37. Aside from their misreading of the statutory text, plaintiffs offer no reason to believe it is "unreasonable to presume" the inferred finding from the proven fact. *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 250 (5th Cir. 2024).

### III.    Plaintiffs' Other Arguments Lack Merit

Plaintiffs briefly sketch a host of arguments the district court did not address. Br. 37-44. This Court should not address them in the first instance, but they are meritless.

**A.** Plaintiffs assert that ATF cannot "redefine" statutory terms, Br. 37-38, cannot provide definitions of "simple" terms, Br. 38, or cannot use terms not already present in the statute, Br. 39. The precise nature of these objections is unclear. To the extent plaintiffs suggest that the Rule's definitions depart from the statute, that is mistaken for reasons already discussed. But plaintiffs provide no explanation for why ATF is forbidden from explaining the common meaning of terms in the statute. Indeed, plaintiffs discuss just one such term—"sale"—and notably do not argue that ATF is mistaken about the correct interpretation of that term. Br. 38.

Nor do plaintiffs identify any authority suggesting that an agency can never use a term—and define a term—that does not appear in a statute. Br. 39. Many regulations use defined terms for ease of reference and clarity, regardless of whether a particular term appears in the underlying statute. For example, the Rule here addresses a particular problem: some licensed dealers voluntarily surrender or involuntarily lose their licenses while they still have business inventory. As plaintiffs acknowledge, such individuals "are subject to the same rules as those who have never been licensed." Br. 39; *see* 18 U.S.C. § 921(a)(21)(C); *see also* 27 C.F.R. §§ 478.57(c), (d); 478.78(c), (d). It is thus difficult to lawfully dispose of that business inventory;

19

selling it to the general public would involve engaging in the same conduct for which they are no longer licensed. That the Rule uses a defined term—"former licensee inventory"—to capture the circumstances being addressed is neither novel nor unlawful. And far from "expand[ing]" the statute, Br. 39, the Rule benefits such former licensees by providing a clear path for those individuals to liquidate or transfer their inventories while avoiding liability, even though the path provided would otherwise constitute engaging in the business of dealing. *See* 89 Fed. Reg. at 29,092 (27 C.F.R. §§ 478.57(b), 478.78(b)).

Finally, the rule of lenity (Br. 39-40) "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and quotation marks omitted). Plaintiffs identify no "grievous ambiguity," and in any event, the Rule adopts the correct reading of the statutory text.

**B.** Plaintiffs' constitutional arguments fail. Plaintiffs' Second Amendment argument hinges on the assertion that the Rule is unlawful unless the government can show that "the Founders sought to license *private, noncommercial* sellers who occasionally sold and traded personal firearms." Br. 41. That is not what the Rule requires, as discussed. In any event, requiring persons engaged in the business of dealing in firearms to obtain a license comports with the Second Amendment. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court made clear that

"longstanding … laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures," *id.* at 626-27, 627 n.26, and this Court has explained that the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), "did nothing to disturb that part of *Heller*," *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024). Indeed, in *Bruen*, both the majority opinion and Justice Kavanaugh's concurrence affirmed the constitutionality of "'shall-issue' licensing regimes," in which the right to carry weapons is conditioned on passing a "background check" and obtaining a license. 597 U.S. at 38 n.9; *see also id.* at 80 (Kavanaugh, J., concurring). And this Court recently held that the background check requirements of the BSCA are constitutional, even though those background checks may delay an individual's ability to purchase a firearm. *McRorey*, 99 F.4th at 839. If it is permissible to require a license to *bear* arms, a right listed in the Second Amendment, there is no reason that it would violate the Second Amendment to require a license to *deal* in firearms, an activity not mentioned in the Amendment's text. *See id.* at 835-37; 89 Fed. Reg. at 29,002 (citing cases).

The GCA's modest requirements for commercial sales are, moreover, "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. As ATF explained, "there is a robust historical tradition supporting the Government's authority to require licenses and inspection of firearms sellers." 89 Fed. Reg. at 29,002. For example, in 1794, Congress enacted a law temporarily making it unlawful "to export from the United States any cannon, muskets, pistols,

bayonets, swords, cutlasses, musket balls, lead, bombs, grenados, gunpowder, sulphur or saltpetre," Act of May 22, 1794, ch. 33, § 1, 1 Stat. 369, 369, making clear that the Founding generation believed that it was constitutionally permissible to regulate arms sales.

Plaintiffs' Fourth Amendment argument proceeds from the same mistaken claims about the scope of the Rule and is foreclosed. The Supreme Court has upheld the GCA's inspection requirements, explaining that "[w]hen a [firearms] dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." *United States v. Biswell*, 406 U.S. 311, 316 (1972). Plaintiffs urge that *Biswell* is "highly suspect," Br. 42, but even if so, this Court remains bound to follow it. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). And plaintiffs cite nothing suggesting that a Fourth Amendment issue arises because some people might deal in firearms from home rather than business premises, Br. 41-42; the business is "pervasively regulated" no matter where it is conducted. *Biswell*, 406 U.S. at 316.

Plaintiffs' "separation of powers" argument (Br. 43-44) simply restates their statutory arguments about ATF's authority to promulgate the Rule and the accuracy of ATF's interpretation. *See Dalton v. Specter*, 511 U.S. 462, 472 (1994) (explaining that not "every action" taken "in excess of … statutory authority is *ipso facto* in violation of the Constitution"). Plaintiffs' vagueness argument (Br. 42-43) likewise rehashes their

statutory arguments. As discussed, the specific conduct identified in the Rule is nothing more than a distillation of precedent and practice applying the statute. The Rule thus promotes public understanding and consistency in application by identifying those principles. To the extent plaintiffs argue that the Rule is vague because it recognizes that the statutory inquiry is fact-specific, many provisions call for inquiry into subjective intent or "the application of a qualitative standard … to real-world conduct" without thereby becoming vague. *Johnson v. United States*, 576 U.S. 591, 604 (2015). Plaintiffs agree that the statutory inquiry is ultimately "fact-specific," Br. 33, and do not dispute that a factfinder should take into account all relevant facts, not just those identified in a presumption. In any event, plaintiffs do not attempt to satisfy the rule that a facial attack on a regulation requires showing that it is "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

## IV.    The District Court Erred in Its Assessment of the Equities and the Scope of Relief

Plaintiffs' equitable arguments are essentially derivative of their substantive claims. Plaintiffs again assert that individuals face "criminal enforcement" of the Rule, Br. 44, despite the fact that the Rule expressly does not apply in any criminal proceedings, *see* 89 Fed. Reg. at 29,092 (27 C.F.R. § 478.13(h)). Nor have plaintiffs identified a future civil or administrative proceeding in which the Rule might apply.. Indeed, plaintiffs' two examples of supposed enforcement predate the Rule by a

decade and two years, respectively, ROA.817, 998-99, and neither can be said to be a product of the Rule or show any irreparable injury. Finally, the State plaintiffs simply repeat the same remote and speculative assertions of lost tax revenue that cannot suffice for standing. Br. 44.

Plaintiffs do not dispute that licensure of dealers improves public safety, including by keeping firearms out of the hands of prohibited persons and by allowing tracing of firearms recovered at crime scenes. They instead simply disagree with ATF's interpretation of what the statutory text covers. Br. 45. But as discussed, the Rule tracks the statute and decades of cases applying it, and it is plaintiffs who seek to disrupt "the status quo." *Id.*

Plaintiffs likewise fail to justify the breadth of the injunction here. They provide no response to our observation (Gov't Br. 50) that the injunction presently purports to apply to individuals not known to the district court or the government and do not explain how that result could be consistent with basic equitable principles governing injunctive relief. As we explained, those principles require limiting relief to members of the associational plaintiffs who have been identified in district court and agreed to be bound by the judgment.

Plaintiffs strain to justify the district court's extension of the injunction to the entire Rule, rather than specific provisions found likely unlawful. They do not dispute that the district court conducted no analysis as to many components of the Rule and do not dispute that the district court undertook no severability analysis. The Rule, for

example, puts ATF's longstanding guidance regarding auctioneers into the regulations, *see* 89 Fed. Reg. at 28,975, 29,021, 29,023 (27 C.F.R. § 478.13(a)), which plaintiffs do not challenge.

Plaintiffs highlight that they have challenged other components of the Rule aside from those the district court addressed, Br. 46; *see* Br. 37 (discussing presumptions the district court did not). But many of those provisions address different questions, such as how an individual who relinquishes or loses a federal firearms license may dispose of business inventory or what qualifies as a "purchase." *See, e.g.*, 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11) (defining various terms); *id.* at 29,092 (27 C.F.R. § 478.57) (adding provision pertaining to "Discontinuance of business"). Plaintiffs do not argue here that many of these definitions are incorrect, much less explain how they are harmed by such definitions. And plaintiffs do not explain why these provisions rely or depend on the presumptions the district court actually addressed, and more generally, plaintiffs cannot be entitled to a preliminary injunction against provisions of the Rule when no court has concluded they have a likelihood of success on the merits or meet any of the other injunctive factors with respect to those provisions.

Plaintiffs suggest (Br. 45) that these unmentioned provisions are subsumed in the district court's general statements about the Rule's presumptions as "problematic" or based on "*ipse dixit*." ROA.1007-08. Many of the provisions we have highlighted are not presumptions at all; they are instead either definitional provisions or

substantive provisions that do not contain presumptions.  89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11); *id.* at 29,092 (27 C.F.R. § 478.57).  But more generally, a district court cannot properly enter injunctive relief based on an unreasoned assertion that unaddressed parts of a rule are "problematic."

Finally, plaintiffs suggest that the district court should consider severability "in a merits decision," presumably at final judgment.  Br. 46.  But plaintiffs cannot leverage the district court's erroneous approach to obtain a preliminary injunction against provisions of the Rule without a holding that they are likely to succeed on the merits of their challenge to those provisions.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MICHAEL S. RAAB

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
KEVIN J. KENNEDY
*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*
*bradley.a.hinshelwood@usdoj.gov*

December 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,492 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood